UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                        :

PARI SHOJAE,                       :
                        :

               Plaintiff,     :        15-cv-5248 (KBF)
                        :

        -v-               :
                        :

HARLEM HOSPITAL CENTER, NEW YORK  :      OPINION & ORDER
CITY HEALTH AND HOSPITALS       :
CORPORATION, SHAHNAWA KHAN, and  :
HENNA FAROOQI,             :
                        :

            Defendants.  :
                        :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 12, 2018

KATHERINE B. FORREST, District Judge:

On July 7, 2015, plaintiff Pari Shojae, a Muslim Persian female pharmacist previously employed by Harlem Hospital Center, brought this action against Harlem Hospital Center ("Harlem Hospital"), New York City Health and Hospitals Corporation ("HHC"), Shahnawa Khan, and Henna Farooqi, alleging discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq as well as under state and local laws.

On or about November 20, 2013, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); on or about April

12, 2015, the EEOC issued a Notice of Right to Sue Letter.  (Am. Compl. ¶¶ 4–5.)

Plaintiff timely filed this lawsuit.

On May 26, 2017, defendants Harlem Hospital, HHC, and Farooqi moved for summary judgment on all claims.[1]  (ECF No. 63.)  On September 11, 2017, this case was transferred to the undersigned.

For the reasons set forth below, defendants' motion for summary judgment is GRANTED.

## I.    FACTUAL BACKGROUND

The following facts are materially undisputed and all inferences are drawn in favor of the plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff holds a doctorate in pharmacy and was hired in or about August 2009 as a Level 2 IV Supervisor at Harlem Hospital.  During the relevant period, she was under the supervision of both defendants Khan and Farooqi.

---

[1] On the eve of a default judgment being entered, defendant Khan made his first appearance on November 6, 2017.  Following a request from this Court to state his position, he subsequently moved to join this motion.  The plaintiff objected to his joinder in a conclusory statement but proffered no evidence suggesting that the outcome as to Khan would be different or providing any additional facts in that regard. The failure to do so leaves only the record that is presently before this Court.  The plaintiff also requested that the Court reconsider its Order curing the default against defendant Khan, proffering evidence that Khan was aware of the fact that he was not represented as early as 2015.  However, no evidence has been offered showing that Khan acted willfully.  In addition, there is a strong preference to adjudicate on the merits, see, e.g., New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005), this Court will not now find defendant Khan in default.  Thus, in this Opinion, the Court's consideration and grant of summary judgment is as to all defendants, including defendant Khan.

A. <u>Plaintiff's Work under Defendant Khan</u>

Plaintiff claims that defendant Khan discriminated against her by virtue of her religion, national origin, and gender. Specifically, she points to three separate incidents with defendant Khan during her employment.

First, she was offered a signing bonus of $10,000 upon accepting the job. (ECF No. 64, Nacchio Declaration ("Nacchio Decl."), Ex. C.) Plaintiff claims that she never received this bonus, and that when she asked defendant Khan for it, he said to her that "a regular Pakistani woman" would "never ask for a signing bonus" and that it is "improper behavior for a woman." (ECF No. 66, Defendants' Local Rule 56.1 Statement ("Defs.' 56.1 Statement") ¶ 11).

Second, in March 2011, Khan reassigned plaintiff to a stockroom supervisor position; this reassignment did not affect plaintiff's salary.[2] (Id. ¶¶ 33–34.) In that new assignment, plaintiff supervised Khan's nephew, whom she accused of stealing and refusing to work. (Id. ¶¶ 36–37.) In or about May 2011, plaintiff confronted Khan about his nephew. (Id. ¶ 38.) She alleges that he responded, "Pari, you are Muslim, you need to be on our side" and also that in "Pakistan, a woman would never speak to [him] this way." (Id. ¶¶ 38–39.) Also in May 2011, Khan reassigned her to a satellite pharmacy. (Id. ¶ 41.) This reassignment did not affect plaintiff's salary.[3] Plaintiff claims that after this reassignment she began to be excluded from

---

[2] Plaintiff admits that her salary was not altered, but maintains that this was a demotion. (ECF No. 79, Plaintiff's Local 56.1 Statement ("Pl.'s 56.1 Statement") ¶ 34)
[3] Again, plaintiff calls this a "demotion." (Id. ¶ 42.)

meetings, though she does not know how many meetings she was excluded from or who decided the attendees. (Id. ¶¶ 44–46.)

Third, on May 15, 2012, plaintiff received a letter from defendant Khan regarding her excessive absences from work. (Id. ¶ 47.)

On September 15, 2012, plaintiff wrote a letter to Human Resources complaining of discrimination by defendant Khan. (Id. ¶ 50.) This was the first official complaint filed. (Id. ¶ 51.)

Defendant Khan issued two letters to plaintiff after this date—one on November 1, 2012, which cited her for insubordination by being away from her desk during a "Code Blue," and one on February 6, 2013, which regarded her failure to provide medical interventions. (Id. ¶¶ 69, 71.) Neither letter had an effect on her job. (Id. ¶¶ 70, 72.) However, plaintiff alleges that they were retaliatory in nature and that they caused her "extreme stress." (Id. ¶ 72.)

In June 2013, as a result of an investigation into allegations of nepotism, defendant Khan was demoted from his position, and no longer supervised plaintiff. (Id. ¶¶ 88–91.)

B. Plaintiff's Work under Defendant Farooqi

In June 2013, defendant Farooqi, a Muslim woman of Indian descent, was appointed Interim Director of Pharmacy, replacing defendant Khan. (Id. ¶¶ 90–92.) Shortly thereafter, Farooqi and plaintiff had two altercations. (Id. ¶ 99.) In both cases, plaintiff came to the administrative office, directly connected to Farooqi's office, in order to sign into the timesheet book. (Id. ¶¶ 98, 100.) As a matter of

practice, pharmacy staff are required to sign in and out on a timesheet book that is kept in the administrative office in order to record their working hours.  (Id. ¶ 97.)

On both occasions, plaintiff asked the book to be passed to her outside of the administrative office.  Farooqi reported that plaintiff called her a devil, an allegation later confirmed by two witnesses to the first incident.  (Id. ¶¶ 101, 105, 108.)  Furthermore, witnesses confirmed that plaintiff said that she didn't want to enter the office because she didn't want to see Farooqi's face.  (Id. ¶¶ 105, 108.)  Farooqi told plaintiff her behavior was "unprofessional."  (Id. ¶ 110.)  Plaintiff threatened, on the second such incident, to call the hospital police.  (Id. ¶ 119.)

Farooqi told an administrator about the incidents, who in turn contacted the human resources department.  (Id. ¶ 128.)  Accordingly, on July 3, 2013, plaintiff was informed by Labor Relations Specialist Kassandra King that she was suspended for one month because she referred to Henna Farooqi "as a devil."  (Id. ¶ 129.)  It is the defendants' policy that only a labor relations panel for disciplinary action can suspend an employee; defendant Farooqi did not have this power.  (Id. ¶¶ 130–31.)

On January 23, 2014, after a complete investigation, plaintiff was formally served with disciplinary charges arising from the two June 2013 altercations with Farooqi.  (Id. ¶ 132.)

Plaintiff maintains that all of her altercations with Farooqi were in retaliation for complaints against defendant Khan, asserting without providing any evidence that Farooqi was "close with Khan" and surmising that Farooqi might

retaliate because she is Sunni, and plaintiff complained of "Sunni favoritism and nepotism" by Mr. Khan. (Id ¶ 121.) Farooqi herself does not "consider herself Sunni." (ECF No. 64, Ex. B., Farooqi Deposition ("Farooqi Dep.") at 24.)

C. Plaintiff's Disciplinary Infractions

In addition to the three letters written by defendant Khan discussed above, plaintiff received a number of other disciplinary letters. Most, but not all, of these letters referred to plaintiff's unwillingness to perform medical interventions[4]—a requirement of her job.

On September 28, 2012, she was issued a memorandum to file (a letter for her file noting a problem in her performance) from one of her direct supervisors, Balvant Kabrawala, for refusing to provide medical intervention and unprofessional behavior during a staff meeting. (Id. ¶ 52.) Kabrawala's memorandum stated that plaintiff had said to him during the meeting that she "will answer to God and God will punish you." (Id. ¶ 53.)

On October 3, 2012, Kabrawala issued a second memorandum to file for "[j]eopardizing patient safety, disruptive behavior with uncooperative attitude during staff meeting," and refusing to perform medical interventions. (Id. ¶ 56.) Plaintiff testified that this memorandum was insulting, but that it did not affect her job. (Plaintiff's Deposition ("Pl.'s Dep.") at 120:2–13.)

---

[4] Medical interventions are verifications done by pharmacists to prevent medication errors by doctors. (Defs.' 56.1 Statement ¶ 57.)

On October 24, 2012, plaintiff was required to attend an interdisciplinary meeting regarding the interventions. (Defs.' 56.1 Statement ¶ 62.) Plaintiff testified that this meeting "didn't affect [her] job." (Pl.'s Dep at 121:2–5.)

In April 2013, plaintiff refused to attend two different staff meetings, citing, in a letter she wrote to hospital police, a "hostile work environment." (Defs.' 56.1 Statement ¶ 73.)

On November 19, 2013, Chong Lee, a supervisor, issued a memorandum advising plaintiff she must complete medical interventions and attend staff meetings. (Id. ¶¶ 134–36.) Plaintiff maintains that Lee issued this and other memoranda at Farooqi's instruction and based upon a retaliatory motive, but proffers no evidence supporting this claim. (Id. ¶¶ 137–38.)

On December 30, 2013, Kabrawala wrote to Farooqi complaining of her insubordination and stating that her behavior was "unprofessional and disruptive." (Id. ¶ 140.)

On January 2, 2014, Lee wrote a letter to Farooqi, stating that he was unable to assign plaintiff to satellite pharmacies due to her "refusal" to completely daily intervention reports. (Id. ¶ 139.)

On June 19, 2014, Nadeem Aslam, another pharmacist, complained to Dr. Farooqi in an email that plaintiff's "ethic/attitude could negatively influence or impact other employees," citing her insubordination to him when he was conducting a training in her department. (Id. ¶ 141.)

D. <u>Plaintiff's Suspension, Psychiatric Evaluation, and Termination</u>

On August 25, 2014, plaintiff was instructed by Labor Relations to appear for a psychological evaluation with Dr. Stephen Fayer and placed on involuntary medical leave, pursuant to Regulation 1 of HHC. (<u>Id.</u> ¶¶ 142–43.) Regulation 1 requires employees to seek psychiatric care when there is a belief that misconduct at work is related to psychological issues. (<u>Id.</u> ¶ 145.)

Dr. Fayer examined plaintiff on September 2 and 3, 2014, and found that she manifested "a personality disorder with borderline and paranoid borderline narcissistic features" and thus was "not fit to perform the duties and responsibilities of her position as Pharmacist Level 1." (<u>Id.</u> ¶¶ 146–47.)

On September 16, 2014, plaintiff was informed that she was being placed on a one-year involuntary medical leave of absence effective September 17, 2014. (<u>Id.</u> ¶ 148.) She was further advised that if she believed she had recovered that she should submit documents showing that she was "fit to resume the duties of [her] title." (<u>Id.</u> ¶ 149.) Plaintiff was given one year from the date of recovery to seek reinstatement. (<u>Id.</u>)

On October 14, 2015, plaintiff was informed by letter that Regulation 1 allows termination of any employee who has been on an involuntary medical leave of absence for more than one year and that she must submit any documentation detailing her ability to return to work by October 30, 2015. (<u>Id.</u> ¶¶ 151–52.) Plaintiff did not submit any documentation showing she was fit to work at any time during her leave. (<u>Id.</u> ¶ 150.)

On December 1, 2015, plaintiff was informed by letter that her employment was terminated.  (Id. ¶ 155.)

## II.    LEGAL PRINCIPLES

### A.  Summary Judgment

Summary Judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322–23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere

9

conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted).  In addition, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).  In opposing a motion for summary judgment, a plaintiff "cannot rely on inadmissible hearsay." Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 924 (2d Cir. 1985).

B. Discrimination Claims

1. Title VII, 42 U.S.C. § 1981[5] and NYSHRL

Title VII prohibits employment discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Employment discrimination claims under Title VII and New York State law are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  "To overcome a motion for summary judgment under Title VII, a plaintiff must first satisfy an initial burden of proving by the preponderance of the evidence a prima facie case of

---

[5] Plaintiff's 42 U.S.C. § 1981 claims are not cognizable here—HHC is a "political subdivision under federal employment law" and can only be sued under § 1983, which plaintiff has not alleged in her Amended Complaint.  These claims are therefore DISMISSED.

discrimination." <u>Robinson v. Concentra Health Servs., Inc.</u>, 781 F.3d 42, 45 (2d Cir. 2015) (citing <u>Burdine</u>, 450 U.S. at 252–53). "[T]he plaintiff must demonstrate that: (1) she fell within a protected class under Title VII; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." <u>Robinson</u>, 781 F.3d at 45. "The requirements to establish a <u>prima facie</u> case are 'minimal,' and a plaintiff's burden is therefore not 'onerous.'" <u>Bucalo v. Shelter Island Union Free Sch. Dist.</u>, 691 F.3d 119, 128 (2d Cir. 2012) (citations omitted).

If the plaintiff succeeds in proffering sufficient evidence in support of the <u>prima facie</u> case, the burden of production shifts to the defendant to present evidence in support of a defense that "the adverse employment actions were taken for a legitimate, nondiscriminatory reason." <u>Id.</u> at 132 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506–07 (1993); <u>Burdine</u>, 450 U.S. at 254) (quotation marks omitted). "[W]hile the presumption shifts the burden of <u>production</u> to the defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Bucalo</u> at 129 (quotation marks and alterations omitted).

If the defendant satisfies its burden of production, the presumption raised by the <u>prima facie</u> case is rebutted and drops from the case; "the plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision—a burden that merges with the ultimate burden of

persuading the court that she has been the victim of intentional discrimination."

Id. (citing Burdine, 450 U.S. at 256) (quotation marks omitted); see also Littlejohn

v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015) ("[O]nce the employer presents

evidence of its justification for the adverse action, joining issue on plaintiff's claim of

discriminatory motivation, the presumption drops out of the picture and the

McDonnell Douglas framework is no longer relevant." (quotation marks omitted)).

2. NYCHRL

Section 8–107(1)(a) of the New York City Human Rights Law ("NYCHRL")

makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee

or agent thereof, because of the actual or perceived . . . race, creed, color, national

origin . . . [or] disability . . . of any person, to refuse to hire or employ or to bar or to

discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin.

Code § 8–107(1)(a); see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d

102, 110 (2d Cir. 2013).  Pursuant to amendments enacted by the New York City

Council in the Local Civil Rights Restoration Act of 2005 (which resulted from the

City Council's view that the NYCHRL had previously been "construed too

narrowly"), "courts must analyze NYCHRL claims separately and independently

from any federal and state law claims, construing the NYCHRL's provisions broadly

in favor of discrimination plaintiffs, to the extent that such a construction is

reasonably possible."  Mihalik, 715 F.3d at 109 (citations and quotation marks

omitted).

In order to prevail on a discrimination claim under the NYCHRL, plaintiff must only show that she was treated "less well" than other employees "because of a discriminatory intent." See id., 715 F.3d at 110 (citation omitted). That being said, the NYCHRL "is not a general civility code," and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Id. (internal quotation omitted).

C. Hostile Work Environment

1. Federal and State Claims

A hostile work environment claim under Title VII and New York state law requires a showing that: (1) "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) "a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations and quotation marks omitted). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Id. "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks and citations omitted). The misconduct shown must reach the level of an "objectively hostile or abusive work environment" and the victim must "subjectively perceive the environment to be abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

2. City Claims

As noted above, in order to effectuate the NYCHRL's "uniquely broad and remedial purposes," Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik, 715 F.3d at 109 (internal citations and quotations omitted).

In order to prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that she was treated "less well than other employees" on the basis of a protected characteristic. See Alvarado v. Nordstrom, Inc., 685 Fed. App'x 4, 8 (2d Cir. 2017) (quoting Mihalik, 714 F.3d at 110). Although there is "no doubt that the standard for proving a NYCHRL hostile work environment claim is lower than the standard for proving Section 1981 and NYSHRL hostile work environment claims," Alvarado, 685 Fed. App'x at 8, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive," and that she is "treated less well . . . because of a discriminatory intent." Mihalik, 715 F.3d at 110 (internal quotations omitted).

D. Retaliation Claims

1. Federal and State Claims

Pursuant to Title VII, an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

"Protected activity for purposes of Title VII and NYSHRL retaliation claims encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turned out not to be unlawful, provided that the employee 'had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" Rodas v. Town of Farmington, 567 Fed. App'x 24, 26 (2d Cir. 2014) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).  "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013).

Retaliation claims are evaluated under a burden-shifting analysis.  See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768–69 (2d Cir. 1998) (citations omitted).  First, a plaintiff must make out a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy, 241 F.3d at 282–83.  The defendant then must articulate a legitimate, non-retaliatory reason for the alleged retaliatory conduct.  Quinn, 159 F.3d at 768–69 (citations omitted).  If defendant meets that burden, "plaintiff must adduce evidence sufficient to raise a fact issue as to whether the employer's reason was merely a

pretext for retaliation." Id. at 769 (internal quotation marks, alteration, and citation omitted).

"A plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). However, the temporal proximity must be "very close" to establish the requisite causality. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (holding that 20 months between the employee's action and the alleged retaliatory action provided "no causality at all."). The Second Circuit has never drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . ." Gorman-Bakos v. Cornell Coop. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). Rather, the court should "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). Alternatively, a plaintiff may produce direct evidence of retaliatory animus against plaintiff by the defendant. See Taylor v. Seamen's Soc. for Children, 2013 WL 6633166, at *20 (S.D.N.Y. Dec. 17, 2013).

2. NYCHRL

As previously noted, employment discrimination claims under the NYCHRL are to "be evaluated separately from counterpart claims" brought under federal and state law. Kolenovic v. ABM Indus. Inc., 361 Fed. App'x 246, 248 (2d Cir. 2010); see also Mihalik, 715 F.3d at 109. To "prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf v. Time Warner, Inc., 548 Fed. App'x 693, 696 (2d Cir. 2013) (quoting Mihalik, 715 F.3d at 112). Although the "but for" causation standard does not apply to retaliation claims under the NYCHRL, see Mihalik, 715 F.3d at 116, a plaintiff still must establish that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive.'" Weber v. City of New York, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting Brightman v. Prison Health Serv., Inc., 108 A.D.3d 739, 741 (N.Y. App. Div. 2013)).

E. Timeliness

Title VII Claims based on discrete acts are time-barred if plaintiff does not file a charge of discrimination with the EEOC or a qualified state or local fair employment practice agency within 300 days after the alleged unlawful employment. See 42 U.S.C. § 2000e-5(e)(1). In addition, discrimination claims

under the NYSHRL and the NYCHRL must be filed within three years of the allegedly discriminatory acts.  See Kassner v. 2d Ave. Delicatessen, Inc., 496 F.3d 229, 238 (2d Cir. 2007).

III.  DISCUSSION

The nub of plaintiff's claim is that she was persistently discriminated against on account of her religion, national origin, and gender, primarily by defendant Khan, whom she maintains made several remarks about her gender and national origin.  According to plaintiff, when she complained she was retaliated against, in the form of numerous disciplinary actions and orders from Khan and other supervisors.

Defendants move for summary judgment on several grounds: 1) that plaintiff lacks the evidence to support necessary elements to raise a triable issue for a prima facie case of discrimination—specifically, she fails to offer evidence supporting her fitness for the job; 2) that even if she had proffered such evidence, she has not proffered evidence suggesting that defendants' stated nondiscriminatory reasons were pretextual; 3) that plaintiff has failed to proffer evidence supporting her claim of a hostile work environment; 4) that she cannot make out a prima facie case of retaliation or show the necessary causation to maintain a retaliation claim; and 5) that even if she could make out a prima facie retaliation claim, that she has not offered evidence suggesting that defendants' proffered nonretaliatory reasons were pretextual.  Defendants maintain that plaintiff had mental health issues which made her unfit to do her job.

The Court discusses all of defendants' arguments in turn.

A. <u>Discrimination Claims</u>

    1. <u>Prima Facie Case</u>

To make out a <u>prima facie</u> case of discrimination under Title VII and NYSHRL, the plaintiff must show that: 1) she fell within a protected class; 2) she was qualified for her position; 3) she was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>Robinson</u>, 781 F.3d at 45.

Defendants do not challenge that plaintiff falls within several protected classes. However, they do challenge her fitness for the job. As evidence, they proffer the medical evaluation in which she was diagnosed with a borderline personality disorder, as well as a host of disciplinary records. Plaintiff maintains that she was fit—pointing to her previous job evaluations, in which she was rated between satisfactory to outstanding, depending upon the year.

However, the numerous disciplinary actions and the psychiatric evaluation are detailed and corroborate each other, whereas the evaluations are merely forms filled out with little detail. In light of a clear borderline personality diagnosis, as well as numerous heated altercations at work, no reasonable factfinder could find that plaintiff was, at the time that the adverse actions occurred, fit for her job.

    2. <u>Pretext</u>

Even if plaintiff was able to make out her <u>prima facie</u> case, summary judgment on the discrimination claims would still be appropriate, as she has not

shown that defendants' proffered legitimate, nondiscriminatory reasons for the adverse employment actions were pretextual.

Once plaintiff makes out a _prima facie_ case, defendants are required to offer legitimate, nonpretextual reasons for the alleged adverse actions. In this case, there are several alleged adverse actions. As a threshold matter, many of the alleged adverse actions are time barred.[6] As an additional matter, many of the alleged adverse actions are not truly adverse—the letters plaintiff refers to did not result in demotions or changes in salary, nor did they affect her job. For the purposes of this action, the Court considers the adverse actions to be: 1) plaintiff's July 2013 one-month suspension pending investigation of her altercation with defendant Farooqi; 2) plaintiff's January 2014 official disciplinary action that followed said investigation; 3) plaintiff's August 2014 involuntary medical leave and medical evaluation pursuant to Regulation 1; 4) plaintiff's September 2014 one-year involuntary medical leave; and 5) plaintiff's December 2015 termination.

Defendants have offered legitimate, nondiscriminatory reasons for each of these actions. As to the actions following plaintiff's altercation with defendant Farooqi, defendants have offered eyewitness evidence as to plaintiff's insubordination. As to the actions occurring under Regulation 1, defendants have offered evidence in the form of letters and Dr. Fayer's evaluation as to legitimate,

---

[6] All alleged adverse actions prior to February 13, 2013, are time-barred for the purposes of Title VII and NYSHRL. All alleged adverse actions prior to July 7, 2012 are time-barred for the purposes of the NYCHRL.

nondiscriminatory reasons for the actions taken.  Defendants have met their burden.

Plaintiff, however, has not.  She has proffered no evidence to show that these legitimate reasons were pretextual outside of her speculation that a host of supervisors falsified reports against her because of a discriminatory intention.  This "speculation or conjecture" will not suffice.  Hicks, 595 F.3d at 166.

### 3. NYCHRL

Even under the more liberal standard of the NYCHRL, plaintiff has not done enough—she must show that discrimination was a contributing factor to the adverse employment actions.  She has not done so here—and as a result has raised no triable issue under the NYCHRL.

In sum, plaintiff has not proffered sufficient evidence to allow a reasonable finder of fact to find discrimination.  Summary Judgment is therefore GRANTED to defendants on all of plaintiff's discrimination claims.

### B. Hostile Work Environment

### 1. Title VII/NYSHRL

Plaintiff also claims that she was a victim of a hostile work environment.  In order to prevail on such a claim under Title VII and the NYSHRL, she must show that: 1) the "harassment was sufficiently severe or pervasive" to create a work environment that is both objectively and subjectively abusive or hostile; and 2) that there is a specific basis for imputing the objectionable conduct to her employers. Alfano, 294 F.3d at 373; Harris, 510 U.S. at 21.

21

Defendants argue both that the alleged offending comments and actions are time-barred and also that they are not severe enough to rise to the level the law requires. The Court agrees.

Plaintiff's allegations regarding a hostile work environment stem from defendant Khan's 2009 and 2011 comments. While the comments, if true, may have contributed to an unpleasant environment for plaintiff, she has pointed to no such comments or behaviors after July 2012. And while <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002) does allow a Court to consider time-barred acts when considering a hostile work environment claim, there must be at least one such act within the time period for this to be the case. Here plaintiff points to none.

Moreover, even if they were <u>not</u> time-barred, three comments over a four-year period (under which she worked for defendant Khan) cannot rise to the level of pervasiveness that the law requires.

2. <u>NYCHRL</u>

The standard for a hostile work environment under the NYCHRL is more liberal, but still requires that plaintiff show that the alleged hostile work environment is the product of a "discriminatory intent." For the reasons discussed above, plaintiff has failed to do so.

Plaintiff has raised no triable issues as to her hostile work environment claims. Accordingly, summary judgment is GRANTED to defendants on all of plaintiff's hostile work environment claims.

C. Retaliation

Plaintiff claims that, in retaliation for her complaints about discrimination, she was subjected to numerous adverse actions. To prevail on her federal and state retaliation claims, she must show: 1) that she participated in a protected activity— such as filing a complaint; 2) that defendants knew of this protected activity; 3) an adverse employment action; and 4) a causal connection between her protected activity and the alleged adverse action. McMenemy, 241 F.3d at 282–83. Defendants argue that plaintiff has failed to raise a triable issue as to retaliation because she cannot show the necessary causation between her protected activity and the adverse actions.[7] Defendants also argue that plaintiff has not shown that defendants' proffered nonretaliatory reasons are pretextual. The Court agrees.

Plaintiff cannot prevail on her retaliation claims, at a federal, state, or city level, without raising a triable issue as to defendants' proffered nonretaliatory reasons for engaging in any adverse action. As discussed during plaintiff's discrimination claims, plaintiff has not done so here. Defendants have proffered legitimate nonretaliatory reasons involving plaintiff's insubordinate behavior and poor mental health. In reply, plaintiff only speculates that all of these supervisors, as well as the disciplinary committee and the psychologist, were attempting to retaliate against her for her complaints against defendant Khan and/or her EEOC

_____

[7] As the Court finds that plaintiff has failed to carry her burden as to pretext, it need not reach this issue.

complaint. She must do more in order to raise a triable issue of fact. Therefore, even if she could make out a _prima facie_ case, she could not prevail.

Accordingly, summary judgment is GRANTED to defendants on all of plaintiff's retaliation claims.

D. Claims Against Harlem Hospital

The Court further notes that Harlem Hospital lacks the capacity to be sued in its individual capacity. See, e.g., Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 287–88 (S.D.N.Y. 2006) ("As a facility owned and operated by HHC, Coler/Goldwater may not be sued in its independent capacity."); see also New York City Charter § 396. Accordingly all claims against Harlem Hospital are DISMISSED.

IV.    CONCLUSION

For the reasons set forth above, summary judgment is GRANTED to defendants on all counts. The Clerk of Court is directed to terminate the motion at ECF No. 63 and to terminate this action.

SO ORDERED.

Dated:       New York, New York
             January 12, 2018

_____
KATHERINE B. FORREST
United States District Judge

Cc:
Shahnawa Khan
2125 147th Street,
Whitestone, NY 11357